IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-00630-REB-KLM

JOSHUA E. WINGFIELD,

    Plaintiff,

v.

S.O.R.T. SGT. CLARK,
S.O.R.T. DEPUTY BRIESKE,
S.O.R.T. DEPUTY REID,
S.O.R.T. DEPUTY WOODS, and
FOUR UNKNOWN S.O.R.T. DEPUTIES under Sgt. Clarks [sic] command on 2-23-11 who participated in the use force,

    Defendants.
_____

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion for Summary Judgment on Complaint** [Docket No. 45; Filed May 14, 2012] (the "Motion").  Plaintiff, who is proceeding *pro se*, has not filed a Response, despite multiple extensions of time in which to do so.  *See Minute Order* [#51, #55].  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C.3., the Motion has been referred to this Court for a recommendation regarding disposition.  The Court has reviewed the Motion, the entire case file, and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#45] be **GRANTED.**

## I. Summary of the Case

Plaintiff is a former post-conviction inmate at the Arapahoe County Detention Facility

(the "ACDF").[1] *See Motion* [#45] at 1. In short, Plaintiff alleges in his Complaint that Defendants violated his Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment rights while transferring him to a different cell on February 23, 2011. *Id.* at 3-5; *Compl.* [#1] at 6. Plaintiff contends that he was killed by the Defendants and "returned to the living" as his "remains" were being removed to the facility's infirmary.[2] *See Compl.* [#1] at 8. Plaintiff seeks compensatory damages for "pain leading to death" and punitive damages for "extreme indifference." *Id.* at 10.

Defendants contend that Plaintiff has a history of violence towards staff and was well known by Defendants at the time of the incident at issue. *See Ex. 2, Aff. of Clark* [#45-8] at 2. Plaintiff had at least six instances of violence against facility staff members and of self-harm prior to the events underlying this lawsuit. *See Ex.1, Aff. of Knight* [#45-1] at 4. Defendants were part of a Special Operations Response Team ("S.O.R.T.") ordered to move Plaintiff from his cell by force if necessary on February 23, 2011, in response to threats he had made against detention personnel. *See Ex. 2, Aff. of Clark* [#45-8] at 2. Defendant Clark, who commanded the S.O.R.T., assembled and briefed the team on the transfer. *Id.* The cell extraction of Plaintiff was videotaped pursuant to established prison procedures. *See Ex.1, Aff. of Knight* [#45-1] at 2; *see Ex. 10, Video of force cell extraction* [#45-23, #47] (conventionally submitted).

---

[1] Plaintiff was transferred into the custody of the Colorado Department of the Corrections and out of the ACDF on May 7, 2012. *See Ex. 1, Knight Aff.* [# 45-1] at 3.

[2] Plaintiff attested to the veracity of his Complaint pursuant to 28 U.S.C. § 1746, as demonstrated by the "Declaration under Penalty of Perjury" at the conclusion of his Complaint. *See Compl.* [#1] at 10. The Court will therefore treat the Complaint as an affidavit and accept the non-conclusory allegations stated therein as true in the absence of an issue of material fact created by the evidence provided by Defendants. *See Green v. Branson*, 108 F.3d 1296, 1301 n.1 (10th Cir. 1997).

At approximately 15:55 hours Defendant Clark approached Plaintiff's cell, notified him that he was to be moved, and attempted to obtain his cooperation. *See Ex. 2, Aff. of Clark* [#45-8] at 2. When Plaintiff repeatedly refused to comply with Defendant Clark's commands, the S.O.R.T. entered Plaintiff's cell to remove him. *Id.* at 3. Plaintiff resisted and fought against the teams' efforts to control him. *Id.* After a short struggle, Plaintiff was wrestled to the floor, restrained, and carried out of his cell into an adjoining day room where he was placed face-down on the floor so that his clothing could be removed. *Id.* at 4. While restraining Plaintiff, Defendant Brieske turned Plaintiff's head to the right after Plaintiff complained that he could not breathe. *See Ex. 3, Aff. of Brieske* [#45-9] at 3. Defendant Brieske felt Plaintiff's breath with his hands and visually confirmed that Plaintiff was still breathing. *Id.* While his clothes were being cut off, Plaintiff began to snort, make guttural sounds, and kick his legs. *Id.* at 4. Plaintiff eventually stopped struggling and Defendant Brieske continued to maintain control of his head. *Id.* Around this time, Plaintiff lost consciousness while being restrained on the floor in a prone position. *See Ex. 2, Aff. of Clark* [#45-8] at 4. Defendant Brieske states that it appeared to him that Plaintiff had exhausted himself and had determined not to fight the team any further. *See Ex. 3, Aff. of Brieske* [#45-9] at 5. Defendant Brieske at no time choked Plaintiff or obstructed his breathing. *Id.* He sensed that something could be medically wrong with Plaintiff when Plaintiff was lifted and placed on a gurney for transport to his new cell. *Id.*

Once it was observed that Plaintiff had lost consciousness, he was immediately attended by a nurse who was present throughout the cell extraction as a standard precautionary measure. *See Ex. 2, Aff. of Clark* [#45-8] at 5. A second nurse arrived quickly after and assumed medical supervision of the situation. *Id.* After exhibiting

sporadic responsiveness over a period of several minutes, Plaintiff regained full consciousness and conversed with the persons around him. *Id.* The charge nurse, indicating that Plaintiff may have been suffering an episode of excited delirium, continued attending to him and directed staff regarding his care. *Id.* Plaintiff was immediately transported to an outside medical facility, the Centennial Medical Center, for examination. *See Ex. 8, Aff. of Boles* [#45-14] at 2. Plaintiff there underwent X-rays and/or CT scans of his head, right shoulder, lower spine, and chest, as well as an EKG and a full battery of blood tests. *See Ex. 8, Aff. of Boles*, *attach. B, Phys. Clinical Rpt.* [#45-16] at 1. All testing resulted in negative findings, except for the chest scan, which showed signs of pneumonia. Id.

Plaintiff was transferred that same night from the Centennial Medical Center to the Denver Health Medical Center ("DHMC") for further evaluation. *Id.* at 3. Plaintiff was also assessed at DHMC as possibly suffering from pneumonia. *See Ex. 8, Aff. of Boles, attach. C*, *DHMC Emergency Dep't Visit* [#45-17] at 1. DHMC medical records indicate that Plaintiff reported that he had experienced "chills x1 week, cough x few weeks, chest tight [with] deep breath" and "unable to take deep breath." *See Ex. 8, Aff. of Boles, attach. E*, *DHMC Med. Screening Exam.* [#45-17] at 1. Plaintiff underwent additional evaluation at the DHMC and was released to the ACDF on February 24, 2011, with a discharge diagnosis of "upper respiratory infection" and "schizoaffective disorder." *See Ex. 8, Aff. of Boles, attach. F*, *Discharge Record/Instructions* [#45-17] at 1. Plaintiff was thereafter housed in a behavioral control unit and placed on suicide watch. *See Ex. 8, Aff. of Boles, attach. G*, *Electronic Chart Note* [#45-17] at 1.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering Plaintiff's filings, the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should it "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

#### A. Fifth, Sixth, Ninth, and Fourteenth Amendments

Plaintiff's Complaint asserts two related claims. *See Compl.* [#1] at 6-8. The first claim is labeled as "Excessive Force Resulting in Death" and the second claim is labeled as "Extreme indifference to human life." *Id.* at 6, 8. However, both claims appear to be variations on his allegation of excessive force, which Plaintiff brings pursuant to the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments. *Id.* at 6-8. Plaintiff does not explain how each of these Constitutional amendments applies to his case. The Court need not adhere to the legal labels attached by Plaintiff to his claims. *See Castro v. United States*,

450 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a *pro se* party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis"). Defendants assert that, because Plaintiff was being held in the ACDF as a post-conviction inmate at the time of the incident, Plaintiff's excessive force claims are to be analyzed under the cruel and unusual punishment clause of the Eighth Amendment. *See Motion* [#45] at 3.

The Tenth Circuit has provided explicit guidance as to the appropriate amendment to apply to an excessive force claim. *See Porro v. Barnes*, 624 F.3d 1322, 1325-26 (10th Cir. 2010). Excessive force claims may be maintained only under the Fourth, Fifth, Eighth, and Fourteenth Amendments. *Id.* at 1325. The appropriate amendment and accompanying legal test depends "on where the defendant finds himself in the criminal justice system." *Id.* The Fourth Amendment applies to incidents "leading up to and including an arrest of a citizen previously at liberty." *Id.* The Eighth Amendment applies to "prisoners already convicted of a crime who claim that their *punishments* involve excessive force . . . ." *Id.* (emphasis in original). The Fifth or Fourteenth Amendments apply to the period between initial seizure and post-conviction punishment. *Id.*

As noted above, the Court appropriately disregards the legal labels applied by a *pro se* plaintiff when those labels serve to obfuscate the nature of the legal claims asserted. *See Castro*, 450 U.S. at 381. In this case, the events underlying the suit all occurred after Plaintiff was convicted and housed at Plaintiff's place of incarceration. *See Compl.* [#1] at 6-8. Thus there is no question that Plaintiff's claim regarding excessive force falls under the cruel and unusual punishment clause of the Eighth Amendment. *See Porro*, 624 F.3d at 1325-26. Accordingly, the Court **recommends** that summary judgment enter in favor

of Defendants on Plaintiff's claims pursuant to the Fifth, Sixth, Ninth, and Fourteenth Amendments.

**B.      Qualified Immunity**

Defendants argue that they are entitled to qualified immunity and that Plaintiff has failed to provide evidence that they used excessive force against him as defined by the Eighth Amendment. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity also offers protection from trial and other burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"[B]ecause qualified immunity is 'designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," the Court reviews summary judgment motions involving a qualified immunity defense "somewhat differently" from other motions for summary judgment. *Clark v. Edmunds*, 513 F.3d 1219, 1221 (10th Cir. 2008) (internal citations omitted). When a defendant asserts a qualified immunity defense in a summary judgment motion, "[t]he threshold inquiry is whether the . . . evidenced facts . . . taken in the light most favorable to the plaintiff show a constitutional violation." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court must also consider whether Plaintiff has shown that "the constitutional right was clearly established at the time of the alleged unlawful activity." *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

In order for Plaintiff's claim "to survive summary judgment, the record must contain

facts that rebut the presumption of [Defendants'] immunity from suit." *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001) (discussing special nature of qualified immunity defense); *see Rounds v. Corbin*, No. 04-cv-02532-CMA-KMT, 2009 WL 2982006, at *2-3 (D. Colo. Sept. 11, 2009) (denying summary judgment motion on qualified immunity where plaintiff "submitted more than unsupported allegations" to support his claim); *Kelley v. City of Albuquerque*, 375 F. Supp. 2d 1183,1203 n.7 (D.N.M. 2004) (citing *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)) (noting that to overcome defendant's motion for summary judgment on basis of qualified immunity, "plaintiff must do more than rest on its own speculation or pleadings"); *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 593 (10th Cir. 1999) (denying summary judgment on qualified immunity where the "[t]he record supports the allegation that the plaintiffs' Fourth Amendment rights were violated"); *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991) (noting that when "a government official raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must produce facts sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred").

Plaintiff bears the burden of proving that Defendants' actions violated clearly established law. *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994). *See Saucier*, 533 at 201 ("[W]hether the right was clearly established ... must be undertaken in light of the specific context of the case, not as a broad general proposition ."). "[T]he right the official is alleged to have violated must have been "clearly established" in a particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right." *Id.* at 202

(citation omitted). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct . . . . If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205. After all, "qualified immunity precludes the imposition of liability for 'all but the plainly incompetent or those who knowingly violate the law.'" *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted).

It is no longer mandatory that the Court first consider whether Plaintiff has demonstrated a constitutional violation by Defendants; using its discretion, the Court may move immediately to an analysis of whether the right at issue was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 236. In this matter, it is appropriate to first address whether Plaintiff has demonstrated that Defendants violated his constitutional rights.

Plaintiff presents no evidence whatsoever other than the sworn statements in his Complaint [#1]. Plaintiff merely contends that Defendants' used excessive force on him and that he "died." *See Compl.* [#1] at 4-8. This conclusory (and factually implausible) statement, unsupported by evidence, is not enough to counter Defendants' properly supported assertion of qualified immunity. *E.g., Simms*, 165 F.3d at 1326 ("the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof."); *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995) ("Once the affirmative defense of qualified immunity is asserted, the plaintiff bears the burden of coming forward with facts sufficient to show both that the defendant's alleged conduct

violated the law and that [the] law was clearly established when the alleged violation occurred." (citation and internal quotation omitted)); *see also Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) ("conclusory and self-serving affidavits are not sufficient" to establish a genuine issue of material fact).

In any event, the Court finds that the evidence proffered by Defendants demonstrates the absence of a genuine fact issue regarding whether Defendants violated Plaintiff's constitutional rights. When a claim of excessive force is brought pursuant to the Eighth Amendment, the Court "ask[s] only whether the 'force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Porro*, 624 F.3d at 1325 (citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977)). The use of restraint by prison officials for a limited time frame is not *per se* unconstitutional. *See, e.g., Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000) (finding limited use of restraint chair to be constitutional, in absence of a "sufficiently culpable state of mind" by defendants); *Prigmore v. Bryant*, No. 4:09-2849-GRA-TER, 2010 WL 2696525, at *4 n.5 (D.S.C. Apr. 26, 2010) (recognizing that inmate's placement "in a restraint chair for twelve hours was not a *per se* constitutional violation" (citation omitted)); *Zimmerman v. Schaeffer*, No. 1:06-cv-01893, 2009 WL 5111765, at *5 (M.D. Pa. Dec. 16, 2009) (finding no evidence in the record to indicate that "a definite length of time in restraints is *per se* excessive").

Here, it is undisputed that Plaintiff refused Defendant Clark's orders multiple times, only after which Defendant Clark invoked the S.O.R.T. protocol to remove Plaintiff from his cell. It is also undisputed that Plaintiff had a history of threats and violence and that the S.O.R.T. team was prudent to proceed with caution when dealing with Plaintiff. There can

likewise be no genuine dispute that Plaintiff was unrestrained as soon as he became compliant and Defendants were aware that anything might be medically wrong with him, a process which lasted a matter of minutes. *See Ex. 10, Video of force cell extraction* [# 47] (conventionally submitted). The Court has reviewed the video recording of the forced cell extraction, and the recording corroborates the individual officers' reports as outlined in their affidavits and the Background section of this Recommendation. *See id.* There is no evidence that Plaintiff's loss of consciousness was directly attributable to the level or type of force employed by Defendants; further, there is no evidence that Plaintiff sustained any physical injury from any member of the S.O.R.T. Thus, the undisputed record before the Court supports Defendants' position that Plaintiff's constitutional rights were not violated, and Defendants are thus entitled to qualified immunity. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishments Clause.").

Although the Court must review "the evidence in the light most favorable to the nonmoving party, ... the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden [of establishing the elements required to overcome an assertion of qualified immunity]; otherwise, the defendant [is] entitled to qualified immunity." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citation omitted). The record before the Court is devoid of any evidence demonstrating that Plaintiff has met his burden of establishing that Defendants violated his constitutional rights, and, as stated, supports Defendants' assertions. Plaintiff fails to rebut the presumption of Defendants' entitlement to qualified immunity, and no genuine issue of material fact exists as to the presented issue. Accordingly, the Motion should be granted, and the Court **recommends** that judgment

enter in favor of Defendants as to Plaintiff's claims against them.

## IV. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#45] be **GRANTED**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: September 4, 2012

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge